**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAURA A.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-451 (GMH) |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

Plaintiff Laura A. filed this action seeking to reverse the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant" or "the Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff alleges that the Administrative Law Judge ("ALJ") who handled her claim erred in several respects in determining that she is not disabled.  Specifically, she contends that the ALJ improperly assessed her Residual Function Capacity ("RFC") and erroneously evaluated her subjective complaints of her impairments.  She seeks reversal of the Commissioner's decision and a judgment that she is entitled to benefits or, in the alternative, remand for a new administrative hearing.  The Commissioner argues that the ALJ's decision should be affirmed.  Upon

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited Aug. 24, 2021).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted in place of her predecessor.  *See* Fed. R. Civ. P. 25(d).

consideration of the parties' briefs and the administrative record, the Court will deny Plaintiff's motion for judgment of reversal and grant Defendant's motion for judgment of affirmance.[3]

## I.      BACKGROUND

### A.      Statutory and Regulatory Framework

To be eligible for SSI benefits under the Social Security Act, the Social Security Administration ("SSA") must find a claimant to be "disabled," meaning that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).   To make that determination, an ALJ gathers evidence, holds a hearing, takes testimony, and performs the following five-step, sequential inquiry of the disability claim:

Step one:  whether the claimant is engaging in "substantial gainful activity";[4]

Step two:  whether the claimant has a "severe" medically-determinable physical or mental impairment or combination of impairments;[5]

Step three:  whether the claimant's impairment is equivalent to one of the disabling impairments listed in the appendix of the relevant regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings");

---

[3] The relevant docket entries for purposes of this Report and Recommendation are:  (1) the administrative record (ECF No. 12 and its attachments), (2) Plaintiff's motion for judgment of reversal (ECF No. 18), (3) Defendant's motion for affirmance and opposition to Plaintiff's motion for judgment of reversal (ECF No. 19), and (4) Plaintiff's memorandum in opposition to Defendant's motion for judgment of affirmance and reply to Defendant's opposition (ECF No. 23).  The page numbers cited herein are those assigned by the Court's CM/ECF system.

[4] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit."  20 C.F.R. § 416.910; *see also* 20 C.F.R. § 404.1510 (defining "substantial gainful activity" for the purposes of Social Security disability insurance benefits ("DIB") claims).  "If [the claimant is] doing substantial gainful activity, [the Social Security Administration] will find that [the claimant is] not disabled." 20 C.F.R. § 416.920(a)(4)(i); *see also* 20 C.F.R. § 404.1520(a)(4)(i) (defining the step one inquiry for DIB claims).

[5] An impairment or combination of impairments is "severe" if it "significantly limit[s]" a claimant's "physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "seeing, hearing, [or] speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; exercising judgment; "[r]esponding appropriately to supervision, co-workers[,] and usual work situations"; or "[d]ealing with changes in a routine work setting."  20 C.F.R. § 416.922; *see also* 20 C.F.R. § 404.1522 (defining a severe impairment for the purposes of DIB claims).

After step three, the ALJ determines the claimant's residual functional capacity ("RFC")—i.e., the most he or she is able to do notwithstanding his or her physical and mental limitations;

Step four:  whether the impairment prevents the claimant from performing his or her past relevant work;[6] and

Step five:  whether the claimant, in light of his or her age, education, work experience, and RFC, is unable to perform another job available in the national economy.[7]

See 20 C.F.R. § 416.920; see also 20 C.F.R. § 404.1520 (outlining the five-step sequential inquiry for DIB claims); Butler v. Barnhart, 353 F.3d 992, 997 (D.C. Cir. 2004).  "An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability. Affirmative answers to questions 3 or 5 establish disability."  Hines v. Bowen, 872 F.2d 56, 58 (4th Cir. 1989).

The claimant bears the burden of proof at the first four steps of the evaluation.  Callahan, 786 F. Supp. 2d at 89.  At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy the claimant can perform.  Id.  In making this determination, an ALJ may call a vocational expert ("VE") to testify at the hearing as to whether, based on the claimant's RFC, he or she can perform other work that exists in the national economy.  Id. at 90.

---

[6] "Past relevant work" is work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 416.960(b)(1); see also 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" for the purposes of DIB claims).  If the claimant can perform his or her past relevant work, a finding of "not disabled" is mandated.  20 C.F.R. § 416.920(a)(4)(iv); see also 20 C.F.R. § 404.1520(a)(4)(iv) (defining the step four inquiry for DIB claims).

[7] At the fifth step, the ALJ may, "'[i]n the ordinary case, . . . resort[ ] to the applicable medical vocational guidelines'" (also known as "the grids") to determine whether the claimant is disabled.  Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (quoting Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)); see also 20 C.F.R. Pt. 404, Subpt. P, App. 2.  "The grids 'take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.'"  Id. (alteration in original) (quoting Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)). Additionally, in determining whether "unskilled, sedentary, light, and medium jobs exist in the national economy" that a claimant can perform, a vocational expert may rely on the Dictionary of Occupational Titles, 20 C.F.R. § 404.1566(d)(1), which "provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker."  Callahan v. Astrue, 786 F. Supp. 2d 87, 90 (D.D.C. 2011).

**B.      Plaintiff's Disability Claims, Procedural History, and the Administrative Hearing**

Plaintiff was born in September 1967, has a high school degree, completed some college education, and last worked as a mail clerk.  ECF No. 12-2 at 27–28, 44.  Plaintiff left various positions because of health issues and has not engaged in substantial gainful activity since February 2018.[8]  *Id.* at 16, 47–50.

Plaintiff filed applications for SSI and DIB benefits in March and May 2018, respectively. ECF No. 12-2 at 13.  She claimed that she had been disabled since February 19, 2018, due to depression, hypertension, calluses on both feet, degenerative disc disease, and substance abuse. *Id.* at 17; *see also* ECF No. 12-3 at 3.  The SSA initially denied her claims for benefits in January 2019, ECF No. 12-2 at 13, and affirmed that decision in July 2019, *id.*  Plaintiff then requested a hearing before an ALJ, which was held on June 8, 2020.  *Id.*

At the hearing, the ALJ took the testimony of Plaintiff and a VE.  *Id.* at 38–77.  Plaintiff testified that she completed high school and one semester of college, and lives with her daughter. *Id.* at 44–45.  She said that she last worked in a data entry role from October 2019 to February 2020, but left the position due to unspecified health issues.  *Id.* at 47.  Her other past employment included work as a general clerk and mail carrier.  *Id.* at 48–49.  Plaintiff asserted that anxiety, depression, and back pain have prevented her from keeping jobs, with the latter making it uncomfortable for her to stand, a problem exacerbated by the calluses on her feet and the numbness in her legs.  *Id.* at 50.  She testified that she takes medication for anxiety, hypertension, and to sleep; the anxiety medication is effective, she said, but the medication meant to treat her hypertension is not (despite being on a special diet).  *Id.* at 51–52, 54–55.  Plaintiff also stated that

---

[8] Plaintiff testified at the hearing that she was employed in a data entry role from October 2019 to February 2020, but stopped due to unspecified "health reasons."  ECF No. 12-2 at 47.  The ALJ concluded that that role did not constitute substantial gainful activity.  *Id.* at 16–17.

she had been to podiatrist and wears shoe inserts to alleviate pain caused by her foot calluses, yet they still cause her discomfort. *Id.* at 53–54. She further testified that she is seeing a psychiatrist, who prescribes medication for her. *Id.* at 55–56. Plaintiff admitted that she had "tried" cocaine to address her pain but it did not help, and has since discontinued use of the drug. *Id.* at 56–57. Plaintiff then testified that she cannot stand unassisted and that she can only sit for two to three seconds at a time before her legs begin to feel numb. *Id.* at 57. She stated that although she tries shopping, she could not pick up a gallon of milk without pain running down her back and into her legs. *Id.* at 58–59. Plaintiff also said that she is off her feet 16 hours a day, lies down about six hours during the day (five of those hours with her feet elevated). *Id.* at 59–60. She fears falling when showering, so she holds onto something and avoids bathing when home alone. *Id.* at 60–61. She asserted that she has to rock to stand up from a seated position. *Id.* at 62. She does not leave her residence to visit friends; rather, they come to visit her. *Id.* Plaintiff no longer drives due to her anxiety, though she still has a driver's license. *Id.* at 62–63, 65. Plaintiff said she no longer cooks because of the pain of standing. *Id.* at 63. She has problems with her hands and has trouble with buttons and zippers, though she admitted to using a computer "a little" and that a wrist brace alleviated her pain somewhat. *Id.* at 63–64.

Following Plaintiff's testimony, the ALJ took testimony from the VE. First, the VE classified the Plaintiff's past work history according to the Dictionary of Occupational Titles ("DOT"). *Id.* at 66–67, 74. That work included positions as a mail clerk, mail carrier, and data-entry clerk. *Id.* at 66–67. The ALJ then posed a series of hypothetical questions to the VE. The first hypothetical queried whether someone of Plaintiff's age, education, and work experience who could "occasionally" lift and/or carry twenty pounds, could "frequently" lift and/or carry ten pounds, could stand and/or walk for a total of six hours in an eight-hour workday and sit for six

hours of an eight-hour workday, could push and pull as much as she could lift or carry, retained the ability to concentrate, persist and stay on pace when performing simple, one-to-four step, routine tasks, could only make occasional decisions, and could only work where there are occasional changes in the work setting could perform Plaintiff's past work. *Id.* at 69. The VE determined that this hypothetical person would still be able to work as a mail clerk, and could also find work as an office helper, cleaner/housekeeper, or cafeteria attendant. *Id.* at 70. The second hypothetical was the same as the first, with the addition that the person must be in an occupation that does not require a fast pace or production quotas. *Id.* at 70. The VE stated that the same kind of work available for the first hypothetical person would be available for the second. *Id.* at 71. The third hypothetical was the same as the second but with the added restriction that the worker must elevate their legs to hip level for five hours of an eight-hour workday. *Id.* at 71. The VE said that limitation would preclude all work. *Id.* The fourth hypothetical was the same as the second, except that the individual was limited to sedentary work, could occasionally lift and/or carry ten pounds, could frequently lift and/or carry less than ten pounds, and could stand and/or walk for two hours in an eight-hour workday. *Id.* at 72. The VE also stated that such an individual would have no work available to them. *Id.* The VE then confirmed that even if additional restrictions were inserted into the third or fourth hypotheticals, there would still be no work available for those persons. *Id.* at 72–73. The VE also stated that if the first two hypothetical individuals needed to miss two, unscheduled days of work per month, there would be no work available to them. *Id.* at 73. The VE conceded that the DOT does not discuss absenteeism and lifting of the legs, but that her testimony was based on her education and experience. *Id.* at 74.

### C.      The ALJ's Decision

The ALJ issued his decision on September 8, 2020, ultimately finding that Plaintiff was not disabled and could return to her prior work as a mail clerk and was otherwise capable of light work with certain, additional restrictions. *Id.* at 20, 27.

#### 1.      Substantial Gainful Activity, Severe Impairment, and the Listings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 19, 2018. *Id.* at 16–17.   At step two, he found that Plaintiff had the following "severe" impairments:  depression, hypertension, calluses on both feet, degenerative disc disease, and substance abuse. *Id.* at 17.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any of the impairments in the Listings. *Id.* at 17.  Specifically, he considered Listing 1.04 for back conditions, Listing 4.04 for ischemic heart disease, and Listing 12.04 for mental impairments. *Id.* at 18–20.  For reasons not relevant on appeal, the ALJ found that the medical evidence did meet or medically equal the requirements of Listings 1.04 or 4.04. *Id.* at 18.  As to Listing 12.04, the ALJ stated that the severity of the claimant's mental impairments did not meet or medically equal the "paragraph B" and "paragraph C" criteria. *Id.* at 18–19.  As to the "paragraph B" criteria, the ALJ determined that Plaintiff has a "mild" limitation in understanding, remembering or applying information, which was determined based on her reported daily activities, her educational history, and her mildly impaired recent and remote memory. *Id.* at 18. Likewise, Plaintiff had a "mild" limitation in interacting with others, which the ALJ determined after considering her alleged difficulties getting along with family and friends in tandem with her denial of problems with authority figures or being fired due to workplace disagreements and her reported daily activities. *Id.* at 18–19.  As to her ability to concentrate, persist, and maintain pace,

the ALJ found that Plaintiff was "moderate[ly]" limited.  *Id.* at 19.  The ALJ considered Plaintiff's function report, wherein she listed her daily activities—including cooking, cleaning, and handling finances—and alleged difficulties in concentrating and completing tasks, yet stated that she followed verbal or written instructions well.  *Id.*  He also noted that Plaintiff's difficulty in performing simple mathematical calculations was inconsistent with her education level and work experience.  *Id.*  The ALJ then highlighted a consultative examiner's report that concluded Plaintiff had only "mildly" impaired concentration and attention.  *Id.*  Finally, the ALJ found that Plaintiff's capacity for adapting or managing herself was "mild[ly]" limited.  In reaching that conclusion, the ALJ considered Plaintiff's function report, wherein she claimed difficulties handling stress but no issues adapting to changes in routine; no history of hospitalization, inpatient psychiatric treatment, or living in a highly supportive living environment; and numerous activities of daily living.  *Id.*  In sum, the ALJ determined that Plaintiff's mental impairments did not meet Listing 12.04's "paragraph B" criteria.  For reasons not relevant on appeal, the ALJ also found that the Listing's "paragraph C" criteria were not satisfied.  *Id.* at 19.  The ALJ next turned to Plaintiff's RFC.

## 2.    Plaintiff's RFC

The ALJ determined that Plaintiff has the RFC to perform light work, can sit for a total of six hours and stand and/or walk for a total of six hours in an eight-hour workday, and can push or pull as much as she can lift and/or carry.[9]  *Id.* at 20.  Importantly, the RFC also limits Plaintiff to the performance of simple one-to-four step, routine tasks in occupations where she would have only occasional decision making and occasional changes in the work setting.  *Id.*  The ALJ used the SSA's definition of "occasional," which means "occurring from very little up to one-third of

---

[9] The SSA defines light work as "work requir[ing] standing or walking, on and off, for a total of approximately six hours of an eight-hour workday" and "lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds."  Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5–6 (S.S.A. Jan. 1, 1983).

the time." *Id.* at 20 n.2.  He also clarified that Plaintiff would not have pacing deficits so long as her work was limited as set forth in the RFC. *Id.*

In determining the RFC, the ALJ began by explaining that he considered the entire record, including Plaintiff's symptoms and their consistency with the other evidence in the record, including treatment notes, diagnostic imaging, and physicians' reports and opinions. *Id.*  The ALJ also explained that he engaged in the required "two-step process" when considering Plaintiff's symptoms, first considering whether her medically determinable impairments could be expected to produce her symptoms, and then evaluating the intensity, persistence, and limiting effects of her symptoms to determine the extent to which they limited her work-related activities. *Id.* at 20–21. Ultimately, the ALJ found that while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the alleged intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 21–22.

In reaching that conclusion, the ALJ first summarized Plaintiff's own statements concerning her symptoms and their impact on her ability to work and perform daily activities. *Id.* at 21.  As relevant here, the ALJ recounted Plaintiff's hearing testimony that she was unable to work due to a combination of physical and mental ailments, including low back and foot pain, leg pain and numbness, depression, and anxiety. *Id.*  She claimed she could not stand without support and that she felt numbness in her legs after as little as a few seconds of sitting. *Id.*  The ALJ also recounted Plaintiff's statements that she was off her feet for most of the day, including lying down for up to six hours per day and elevating her feet for five hours. *Id.*  He then noted her allegations that her activities of daily living were impacted by her symptoms, so much so that she testified she can no longer cook or drive, does not bathe when alone for fear of falling, and has episodes of

incontinence. *Id.* She also becomes distracted when reading and has problems sitting and standing. *Id.*

The ALJ then discussed Plaintiff's mental limitations. *Id.* at 22–23. The ALJ noted that Plaintiff has a history of major depressive disorder and was diagnosed with substance abuse in February 2018. *Id.* at 22; *see also* ECF No. 12-7 at 2–4, 7. She was receiving treatment in early 2018 and reported a depressed and anxious mood, stress, anxiety, and irritability. ECF No. 12-2 at 22; *see also* ECF No. 12-7 at 37, 49–50. In November 2018, Plaintiff was diagnosed with major depressive disorder by consultative examiner Dr. Leah Nathan, a psychologist, to whom she complained of sleep interruption, loss of appetite, weight loss, crying spells, and a history of auditory hallucinations and paranoid ideation. ECF No. 12-2 at 22; *see also* ECF No. 12-7 at 68–72. However, Dr. Nathan noted that Plaintiff's "overall manner of relating appeared fair" and found only "mildly impaired intact recent and remote memory as well [as] mildly impaired attention and concentration." ECF No. 12-2 at 22. Dr. Nathan also determined that Plaintiff had "no limitation" regarding her ability to understand, remember, or apply simple directions and instructions; a "mild limitation" with her ability to understand, remember, or apply complex instructions; and a "moderate limitation" to interact adequately with supervisors, coworkers, and the public. ECF No. 12-2 at 22; *see also* ECF No. 12-7 at 70–71. The ALJ observed that Plaintiff was briefly hospitalized from June 12 to 14, 2019, because of suicidal ideation, but that since then her psychological symptoms have remained "largely stable with treatment." ECF No. 12-2 at 22–23; *see also* ECF No. 12-7 at 166–70.

Based on this evidence, the ALJ concluded that the RFC accounted for Plaintiff's mental impairments. First, he explained, there was no history of further psychiatric inpatient treatment or hospitalization after she was hospitalized in June 2019. *Id.* at 22–23. Second, he found that

Plaintiff's reported capabilities—including cooking, cleaning, driving, shopping, handling finances, and involvement in religious activities—were inconsistent with additional mental limitations.  *Id.* at 23; *see also* ECF No. 12-6 at 32–34.  While the ALJ acknowledged that Plaintiff's depression, anxiety, and sleep issues "could certainly interfere with her ability to concentrate," he nevertheless determined that Plaintiff could perform "simple one-to-four, routine tasks" but only in an environment where she has "occasional decision making and occasional changes in the work setting." *Id.*

Next, the ALJ discussed Plaintiff's physical impairments, beginning with her history of degenerative disc disease of the lumbar spine, which was complicated by her foot calluses.  *Id.* at 23–24.  The ALJ concluded that Plaintiff's treatment of her back and foot pain had been "infrequent and conservative," as the record reflected only "intermittent" reports of back and foot pain and did not show Plaintiff pursued recommended podiatric care following an April 2018 evaluation.  *Id.* at 23.  The ALJ also noted Plaintiff's consultative examination by Dr. Justine Magurno, an internist, to whom Plaintiff described "constant back pain and trouble walking" yet also reported daily activities such as cooking three times per week, cleaning five times per week, laundry once per week, shopping, and maintaining personal hygiene.  ECF No. 12-2 at 23; *see also* ECF No. 12-7 at 78–79.  Dr. Magurno also observed that Plaintiff was in "no acute distress," could walk on her heels, squat, had a normal gait and could walk independently, could get on and off the exam table and rise from a chair without difficulty, and had nearly full range of motion, strength, reflexes, and sensation throughout her extremities.  ECF No. 12-2 at 23–24; *see also* ECF No. 12-7 at 80–81.  An X-ray of Plaintiff's lumbar spine conducted as part of Dr. Magurno's examination showed evidence of "mild" degenerative changes, and Dr. Magurno concluded that Plaintiff could "tolerate no more than mild levels of physical exertion" and had "moderate limitations for

standing."  ECF No. 12-2 at 24; *see also* ECF No. 12-7 at 81.  The ALJ also considered records

from an August 2019 examination.  *Id.* at 24.  At that time, Plaintiff complained of back and foot

pain, but showed a normal gait and no sensory or motor issues.  *Id.*  An X-ray conducted at that

time showed small bone spurs, but "otherwise no evidence of degenerative changes."  *Id.*

In light of this evidence, including Plaintiff's history of hypertension that was controllable

with medication and her own reports of her daily activities, the ALJ found that Plaintiff's physical

conditions warranted a "restriction to light exertional work," except that she can sit for a total of

six hours in an eight-hour workday, stand and/or walk for a total of six hours in an eight-hour

workday, and push or pull as much as she can lift or carry.  ECF 12-2 at 24.

The ALJ then turned to the opinion evidence.  *Id.* at 24–26.  At the outset, the ALJ

explained that while he considered the opinion evidence, he did not "defer or give any specific

evidentiary weight, including controlling weight" to it in accordance with the SSA's regulations.

*Id.* at 24.  Instead, he evaluated each medical opinion and explained its persuasive value based on

its consistency with the record and its supportability.  Applying that rubric, the ALJ found Dr.

Nathan's opinion generally persuasive.  *Id.* at 24–25.  Recall that Dr. Nathan concluded that

Plaintiff was not limited in her ability to understand and apply simple directions and instructions

and had only "mildly" impaired attention and concentration.  *Id.* at 24; ECF No. 12-7 at 70.  The

ALJ credited Dr. Nathan's "extensive psychological evaluation," "clear explanations," and her

knowledge of the social security disability system.  *Id.* at 25.  More, the ALJ found Dr. Nathan's

opinion "mostly consistent with the record," save for some inconsistency in the area of Plaintiff's

social functioning.  *Id.*

The ALJ found Dr. Magurno's opinion that Plaintiff was limited to "mild" exertion and

had "moderate" standing limitations persuasive for similar reasons.  *Id.*  He noted her thorough

examination, clear explanations, and experience with the SSA's disability application process. *Id.* Additionally, the ALJ found Dr. Magurno's findings "substantially consistent with [Plaintiff's] reported capabilities." *Id.*

On the other hand, the ALJ found the opinions of Dr. Kirk Geter and nurse practitioner Christopher Obiogbolu "not entirely persuasive." *Id.* at 25–26. Dr. Geter was of the opinion that Plaintiff "could maintain attention and concentration for less than two hours" and "should elevate her legs with sitting." *Id.* at 25. He also found that Plaintiff did not need an option to lie down during the workday, could walk independently, and could use foot controls. *Id.* The ALJ noted that Dr. Geter did not support his opinions with "objective clinical findings," and also explained that there were no "significant cardiopulmonary issues" that would support a leg elevation limitation. *Id.* More, the ALJ emphasized Dr. Geter's concession that he had not seen Plaintiff in some time due to the COVID-19 pandemic, rendering his opinion "limited." *Id.* As to Mr. Obiogbolu, the ALJ noted his opinion that Plaintiff could concentrate for more than 30 minutes, but would also be off task for 10 percent of the workday, would miss work three times per month due to her impairments, and could not consistently adapt to changes in the workplace. *Id.* at 25–26. The ALJ found those "severe restrictions" were not only inconsistent with the medical evidence as a whole, but also with Mr. Obiogbolu's own treatment notes—which generally reflected Plaintiff's "intact orientations, coherent speech, fair memory, fair concentration, and fair insight and judgment without suicidal or homicidal ideations"—and Plaintiff's reports of her own activities. *Id.* at 26.

Finally, the ALJ found the opinions of Dr. Lisa Venkataraman and Dr. Gemma Nachbahr, the state agency physicians, only somewhat persuasive. *Id.* at 26. Dr. Venkataraman determined that Plaintiff could perform medium work without other restrictions, while Dr. Nachbahr

concluded that she was capable of simple, routine tasks and could adjust to workplace changes. Although the ALJ credited these physicians' thorough explanations and experience with SSA matters, he nevertheless concluded that "[n]ew and material evidence received at the hearing level, including testimony of limitations, tends to show greater limitations." *Id.* Thus, their opinions were only "somewhat persuasive." *Id.*

In sum, the ALJ considered Plaintiff's treatment history, the objective clinical findings, Plaintiff's subjective complaints, and the medical opinions in concluding that Plaintiff has the capacity to perform light work with the limitations set forth in the RFC.

### 3.    Conclusion of the Five-Step Sequential Inquiry

At step four, the ALJ concluded—based on the VE's testimony and the RFC finding—that Plaintiff was capable of performing her past relevant work as a mail clerk, which she performed at the light, unskilled level. *Id.* at 27. Additionally, the ALJ found that there were other positions Plaintiff could fill, including as an office helper, a cleaner/housekeeper, and a cafeteria attendant. *Id.* at 28.[10] Thus, the ALJ did not reach step five of the analysis.

The ALJ's decision became final when the Social Security Administration denied her request for review on January 14, 2021. *Id.* at 2–5.

## II.    LEGAL STANDARD

A federal district court has jurisdiction over a civil case challenging a final decision of the Commissioner. 42 U.S.C. § 405(g). A reviewing court must affirm the Commissioner's decision

---

[10] Following the administrative hearing, Plaintiff submitted a brief objecting to several aspects of the VE's testimony, alleging that: the VE erroneously classified her past work as a mail clerk as light exertional work, when it should have been classified as medium work (which the ALJ found Plaintiff could not perform); the other positions the VE found Plaintiff could fill (i.e., an office helper, a cleaner/housekeeper, and a cafeteria attendant) required a "production pace" of work that she could not perform; the ALJ's use of the SkillTran database to determine the availability of jobs available was inappropriate because SkillTran is unreliable; and the DOT is outdated, does not provide an accurate representation of the demands of jobs available in the present day, and therefore cannot be relied upon. ECF No. 12-6 at 89–92. For reasons not relevant here, the ALJ overruled the objections. ECF No. 12-2 at 28–29. Notably, Plaintiff does not renew those arguments on appeal.

if it is based on substantial evidence in the record and the correct application of the relevant legal standards. *Id.*; *Butler*, 353 F.3d at 999.

"[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It requires "more than a scintilla [of evidence], but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)). Ultimately, the substantial evidence standard is a "low bar," *Louisiana Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), and "requires considerable deference to the decision rendered by the ALJ," *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995); *see also Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency [under the substantial evidence standard] is not high."). The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment "concerning the credibility of the evidence with its own." *Crosson*, 907 F. Supp. at 3; *see also Butler*, 353 F.3d at 999 (finding that the district court's role is not to reweigh the evidence but only to determine whether the ALJ's findings are "based on substantial evidence and a correct application of the law"). However, "this standard of review requires the Court to carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C.

2009); *see also Lane-Rauth*, 437 F. Supp. 2d at 65 ("[T]his standard of review 'calls for careful scrutiny of the entire record,' to determine whether the Commissioner, acting through the ALJ, 'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[.]'" (second alteration in original) (quoting *Butler*, 353 F.3d at 999)).  In applying this standard, courts "must also be mindful of the harmless-error rule.  Consequently, even if [the court] perceive[s] error," it must "affirm the Commissioner's decision unless the error is prejudicial." *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021).

Finally, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017), or credit "post-hoc rationalization[s]" advanced by the parties, *Cooper v. Berryhill*, No. 16-cv-1671, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a reviewing court "must judge the propriety of [an agency's judgment] solely by the grounds invoked by the agency"); *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (citing *Chenery*, 332 U.S. at 196).

### III.   DISCUSSION

Plaintiff advances two arguments in favor of reversing the ALJ's finding that she was not disabled and therefore not entitled to DIB or SSI benefits.  First, she contends that the ALJ erroneously assessed her RFC (1) by failing to account for her moderate limitation in her ability to maintain concentration, persistence, and pace, and (2) by failing to include appropriate limitations on standing and walking.  ECF 18-1 at 3–10.  Second, she says the ALJ erred in evaluating her subjective complaints. *Id.* at 11–14.  Her arguments lack merit. The Court will therefore deny Plaintiff's motion and grant Defendant's motion.

A.      **The ALJ's Assessment of Plaintiff's RFC is Supported by Substantial Evidence**

Plaintiff's initial claim of error centers on the ALJ's RFC determination.  As explained, the ALJ found that Plaintiff could "perform light work," but could only "sit for a total of six hours and stand and/or walk for a total of six hours in an eight-hour workday."  ECF No. 12-2 at 20. Additionally, the ALJ determined that Plaintiff "retain[ed] the ability to concentrate, persist, and stay on pace with regard to performing simple one-to-four step, routine tasks," and could "only be in an occupation where she would have only occasional decision making and occasional changes in the work setting." *Id.* (footnotes omitted).  The ALJ further clarified that "[Plaintiff] experiences no pace limitation when performing one to four step tasks as detailed in the" RFC.  *Id.* at 20 n.1. In other words, he explained, "[Plaintiff] would only experience a pace limitation if doing more than the specifics of this residual functional capacity, e.g. if she were in an occupation which had six steps, non-routine, tasks in a constantly changing work setting." *Id.*  Plaintiff contends that these limitations did not adequately account for her "moderate" limitation in the domain of concentration, persistence, and pace, and failed to incorporate Dr. Magurno's limitations on exertion and standing/walking despite the ALJ's finding that her opinions were persuasive. Neither argument succeeds.

1.      Plaintiff's Concentration, Persistence, and Pace Limitation

Plaintiff's arguments concerning the ALJ's assessment of her moderate limitation in the domain of concentration, persistence, and pace ("CPP") are twofold.  First, she claims the RFC "failed to include any limitation upon concentration, persistence, or pace."  ECF No. 18-1 at 5–6. Next, Plaintiff says the ALJ's restriction to "simple one-to-four step, routine tasks" was not sufficient to account for Plaintiff's moderate CPP limitation.  *Id.* at 6–9.  Both arguments miss the mark, and the Court will address them in turn.

a.     *The RFC Contains Limitations Relevant to Concentration,
Persistence, and Pace*

Contrary to Plaintiff's contentions, her RFC includes limitations on her ability to concentrate, persist, and maintain pace in the workplace. Indeed, "[i]n the same sentence where [Plaintiff] posits that the ALJ did not include any limitations on her concentration, persistence, and pace, she recounts" that the ALJ limited her "to the performance of simple one-to-four step, routine tasks." *Mitchell v. Kijakazi*, No. 19-cv-2560, 2021 WL 5310541, at *5 (D.D.C. Nov. 15, 2021) (finding that RFC restricting claimant to, among other things, "simple one to four step routine, repetitive tasks" was a limitation relevant to CPP); ECF No. 18-1 at 6. As *Mitchell* explained,[11] the restriction to "simple one-to-four step, routine tasks" is a limitation, and Plaintiff concedes as much when expressly characterizing that restriction as a "limitation." 2021 WL 5310541, at *5; ECF No. 18-1 at 6 (characterizing the "simple one-to-four routine repetitive tasks" restrictions as a "limitation"). More, *Mitchell* and other courts have found that other limitations in Plaintiff's RFC—namely, the ones requiring only "occasional decision making and occasional changes in the work setting"—are also "concentration-based restriction[s]." *Frazier v. Comm'r of Soc. Sec.*, No. 14-cv-1062, 2015 WL 4205210, at *4 (S.D. Ohio July 10, 2015), *report and recommendation adopted*, 2015 WL 5145557 (S.D. Ohio Sept. 1, 2015); *see also Mitchell*, 2021 WL 5310541, at *5 (finding that restriction to "only occasional decision making" was relevant to CPP limitation).

---

[11] Plaintiff claims that *Mitchell* "does not appear to directly address the issue at hand"—that is, the question of whether an ALJ can properly limit a claimant with moderate CPP limitations to "simple one to four step routine, repetitive tasks"—because the court in that case "did not address the narrative discussion requirement for the residual functional capacity assessment as set forth in S.S.R. 96-8p." ECF No. 23 at 5 (citing SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996)). Plaintiff does not expound on that argument or further clarify it. However, to the extent Plaintiff relies on the portion of SSR 96-8p requiring "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," *id.* at *7, *Mitchell* found that the narrative discussion requirement was met, *see* 2021 WL 5310541, at *4–5. In any event, the Court finds *Mitchell* of particular relevance here because the court in that case was presented with a claimant who, as in this case, was found to have moderate CPP limitations that the ALJ accounted for with restrictions similar to those imposed here.

The next and more complicated question is whether these restrictions were sufficient to account for Plaintiff's moderate CPP limitations.  The Court finds that they were.

          b.   *The RFC Appropriately Accounted for Plaintiff's Moderate Limitation in Concentration, Persistence, and Pace*

As explained, Plaintiff contends that the restrictions set forth in her RFC do not sufficiently address her CPP limitations.  ECF No. 18-1 at 6–9.  The Court disagrees.  However, because this area of social security law is not without its complexity, the Court will undertake a preliminary review of the concentration, persistence, and pace issue.

At step three of the five-part sequential disability analysis, the ALJ must determine whether the claimant's impairments are equivalent to one of the "Listings" contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If the impairments are equivalent to a Listing, the claimant is disabled.  *Hines*, 872 F.2d at 58.  There is a set of Listings for mental disorders.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.  One of those Listings, which the ALJ assessed in his opinion, is Listing 12.04, which governs depressive, bipolar, and related disorders.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04; ECF No. 12-2 at 18–19.  For that Listing, a two-part analysis is required to determine whether the claimant's impairments are equivalent.  Part one is an assessment of the "paragraph A criteria"; those criteria set forth the medical evidence that must be present in the record.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(A).  In the case of depressive disorder, for example, medical records must show five or more of the following:  depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide.  *Id.* § 12.04(A)(1).  Part two of the inquiry focuses on the "paragraph B criteria"; those criteria require that the claimant have an "[e]xtreme limitation of

one, or marked limitation of two, of the following areas of mental functioning":[12] understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 12.04(B). If the paragraph A and B criteria are satisfied, the claimant meets the Listing 12.04 requirements and is disabled.

Here, however, the ALJ found that while Plaintiff was "mild[ly]" limited in the domains of understanding, remembering, or applying information; interacting with others; and adapting or managing oneself, she was "moderate[ly]" limited in concentrating, persisting, or maintaining pace. ECF No. 12-2 at 18–19. The latter criteria—the CPP domain—"refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(3). With respect to this domain, the ALJ reasoned that while Plaintiff indicated on her function report that she encountered "difficulty" in "concentrating and completing tasks," on the same report she "did not allege any significant difficulty following verbal and/or written instructions." ECF No. 12-2 at 19. He also noted examinations where Plaintiff was found to have "mildly impaired attention and concentration." *Id.* The ALJ then contrasted Plaintiff's claims as to her concentration deficits with her numerous activities of daily living, including cooking, cleaning, driving, using public transportation, shopping, handling finances, and social activities outside the home. *Id.* Additionally, the ALJ noted throughout his opinion that examinations showed Plaintiff had "fair insight and judgment, coherent thought processes, fair attention and concentration, [and] intact memory." *See, e.g.*, *id.* at 22, 23, 26. For those reasons, the ALJ found only a moderate limitation with respect to the CPP domain, and therefore the

---

[12] As the ALJ explained, "[a]n extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis," while "[a] marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." ECF No. 12-2 at 18.

paragraph B criteria were not met as to Listing 12.04. Nevertheless, a "moderate" limitation in CPP is still significant in the subsequent RFC analysis.

In SSA parlance, a "moderate" limitation means that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00f(2)(c). Although the SSA's regulations do not define the word "fair," that term, used in this context, is commonly understood to mean "not very good or very bad: of average or acceptable quality." *Fair*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/fair (last visited Aug. 24, 2022). To be sure, "fair" does not mean "poor" or "inadequate," but it certainly does not mean "good" or "great," either. It falls somewhere in the middle of those extremes. That is consistent with this Court's previous explanation that "a moderate limitation in maintaining concentration, persistence, or pace 'necessarily establish[es] some deficit in [the claimant's] ability to sustain focused attention and concentration long enough to permit the timely and appropriate completion of tasks commonly found in work settings.'" *Nsiah v. Saul*, No. 19-cv-42, 2020 WL 12948519, at *14–16 (D.D.C. May 12, 2020) (alterations in original) (quoting *Terri D. v. Berryhill*, No. 17-cv-22, 2018 WL 4688740, at *8 (W.D. Va. Sept. 28, 2018)); *see also Demetria R. v. Kijakazi*, No. 20-cv-3227, 2022 WL 3142376, at *14 (D.D.C. June 30, 2022), *report and recommendation adopted*, 2022 WL 3139026 (D.D.C. Aug. 5, 2022).

Many ALJs, including the one in this case, attempt to account for "moderate" CPP limitations in the RFC by restricting the claimant to simple, routine, unskilled, and/or repetitive work and tasks with a limited number of steps (or some derivation of those limitations)—with mixed success upon review by federal courts. *Compare, e.g.*, *Patrice V. v. Saul*, No. 18-cv-2221, 2019 WL 3778771, at *5 (D. Md. Aug. 12, 2019) (finding that limiting the claimant to one to four

step routine, repetitive tasks did not, without further explanation, sufficiently address moderate CPP limitations) *and Eichelberger v. Colvin*, No. 16-cv-3299, 2018 WL 2740018, at \*2 (D. Md. Apr. 12, 2018) (similar), *with, e.g.*, *Taft W. v. Saul*, No. 19-cv-2781, 2020 WL 7074628, at \*4 (D. Md. Dec. 3, 2020) (finding that limiting claimant to one to four step routine, repetitive tasks adequately addressed moderate CPP limitations), *and Stout v. Colvin*, No. 14-cv-2596, 2015 WL 7351503, at \*12 (D. Md. Nov. 20, 2015) (similar). Lacking guidance from the D.C. Circuit on this issue, this Court has maintained that ALJs can properly account for CPP limitations by limiting the type of work and tasks the claimant can perform—such as, for example, simple and routine tasks or work that requires a limited number of steps—if they "explain how such an RFC is consistent with the claimant's trouble with concentration, persistence, or pace." *Nsiah*, 2020 WL 12948519, at \*15 n.4; *see also Demetria R.*, 2022 WL 3142376, at \*16 n.16. The ALJ must, as always, build an "'accurate and logical bridge from the evidence to [his] conclusion'" and explain why the claimant's ability to perform simple tasks is consistent with an ability to stay on task (i.e., concentrate and/or persist on a task). *Lane-Rauth*, 437 F. Supp. 2d at 67 (alteration in original) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)); *see also Johnson v. Saul*, No. 19-cv-3829, 2021 WL 411202, at \*5 (D.D.C. Feb. 5, 2021) ("As numerous courts have noted, . . . the problem with finding a moderate CPP limitation by requiring 'simple, routine, and repetitive tasks' is that such a restriction, without more, does not actually address plaintiff's mental impairments because the difficulty of a task does not necessarily say anything about his ability to concentrate on it."). In other words, it is decidedly not the case that "an RFC limiting a claimant to," for example, simple, routine, unskilled, and/or repetitive work and tasks with a limited number of steps "can *never* be consistent with a moderate limitation in maintaining concentration, persistence, or pace." *Nsiah*, 2020 WL 12948519, at \*15 n.4. Yet because a "moderate" limitation

in CPP implies some deficiency in that area of functioning, "an ALJ's RFC assessment 'must . . . either adequately account for this deficit or adequately explain why, notwithstanding [that] finding, [the claimant's] overall limitations do not affect her capacity to sustain simple, routine, or unskilled work.'" *Demetria R.*, 2022 WL 3142376, at *14 (second and third alterations in original) (quoting *Nsiah*, 2020 WL 12948519, at *14).

The Court concludes that the RFC finding here adequately accounts for Plaintiff's moderate CPP limitations. As an initial matter, the evidence does not suggest that Plaintiff encounters substantial concentration issues. Indeed, and as the ALJ recounts, Dr. Nathan—whose opinions the ALJ found "generally persuasive"—determined that Plaintiff showed only "mildly impaired attention and concentration," and "no limitation with her ability to understand, remember or apply simple directions and instructions."[13] ECF No. 12-2 at 22, 24–25. Other courts have concluded that an ALJ's reliance on similar findings was appropriate in accounting for moderate CPP limitations. *See, e.g.*, *Stout*, 2015 WL 7351503, at *12 (finding that the ALJ properly supported a RFC limiting the claimant to "simple, one-to four-step, routine, and repetitive tasks despite her moderate limitation in concentration, persistence, or pace" by relying on, among other things, an examiner's conclusion that the claimant "followed short instructions without difficulty"). The ALJ also noted that Plaintiff herself "did not allege any significant difficulty following verbal and/or written instructions." ECF No. 12-2 at 19 (citing ECF No. 12-6 at 35). In fact, Plaintiff conceded in her function report that her ability to following both written and verbal instructions was "good." ECF No. 12-6 at 35. To be sure, this suggests that Plaintiff can perform simple tasks, but it also indicates that she can concentrate—that is, stay on task—for at least some period of time. It would be odd to say that someone who follows both written and verbal

---

[13] Notably, Plaintiff takes no issue with the ALJ's determination that Dr. Nathan's findings and opinions were persuasive.

instructions well, as Plaintiff said she could, has significant trouble staying on task and concentrating, because following instructions necessarily requires a requisite level of concentration.[14]  *See Concentrate*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/concentrate (last visited Aug. 24, 2022) (defining "concentrate" as "to focus one's powers, efforts, or attention").  Thus, although a "moderate" CPP limitation "'necessarily establish[es] *some* deficit in [the claimant's] ability to sustain focused attention and concentration,'" *Nsiah*, 2020 WL 12948519, at *14 (quoting *Terri D.*, 2018 WL 4688740, at *8) (emphasis added), as the ALJ found, the record does not reflect a significant deficit.

Further, Plaintiff's RFC limits her to "simple one-to-four step, routine tasks."  ECF No. 12-2 at 20.  Contrary to Plaintiff's contention, such a limitation is materially different from a limitation to "simple, routine, repetitive tasks," which courts in and out of this Circuit have found insufficient to address moderate CPP limitations.  *See, e.g.*, *Johnson*, 2021 WL 411202, at *5–6; *Rosalind M. v. Saul*, No. 19-cv-2791, 2020 WL 6450503, at *3 (D. Md. Nov. 3, 2020); *Petty v. Colvin*, 204 F. Supp. 3d 196, 205–06 (D.D.C. 2016); *see also Light v. Astrue*, No. 11-cv-618, 2013 WL 1305622, at *13 (E.D. Tenn. Jan. 23, 2013) (distinguishing a limitation on "simple" and "repetitive tasks" from a restriction to simple, repetitive "tasks with one to four step instructions in a low stress environment"), *report and recommendation adopted*, 2013 WL 1305621 (E.D. Tenn. Mar. 28, 2013).[15]  The inclusion of the "one-to-four step" limitation necessarily narrows the

---

[14] It is no doubt correct that "the ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).  But it is also true that if one can follow instructions, then they can also concentrate on those instructions.

[15] Plaintiff's reliance on *Mascio* is therefore misplaced.  ECF No. 18-1 at 7–8.  Here, the ALJ went beyond a limitation to "'simple, routine tasks or unskilled work,'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) and added other, meaningful restrictions to Plaintiff's RFC, including that she can only perform one-to-four step tasks and can only occasionally make decisions and occasionally encounter changes in the work setting, ECF No. 12-2 at 20.  *Petty*, also cited by Plaintiff, ECF No. 18-1 at 8–9, is inapposite for the same reason:  In that case, the ALJ merely limited a claimant with moderate CPP limitations to "simple, routine, repetitive

universe of tasks and jobs Plaintiff can perform to a small subset that demand reduced attention and concentration.  *Cf. Smith-Johnson v. Comm'r, Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (explaining that the ALJ "further reduced the required attention and concentration by restricting [the claimant] to routine and repetitive tasks").  For example, one-to-four step tasks involve work "'such as you pick up the part, you put the part in the bag, you close the bag, put the bag in the box.'"  *Waddell v. Comm'r of Soc. Sec.*, No. 17-cv-591, 2018 WL 494525, at *4 (S.D. Ohio Jan. 22, 2018) (quoting the record), *report and recommendation adopted*, 2018 WL 806327 (S.D. Ohio Feb. 9, 2018).  It is challenging for the Court to comprehend how tasks so limited in complexity would require levels of concentration exceeding Plaintiff's "fair" (i.e., "acceptable") ability to "independently, appropriately, [and] effectively" concentrate, persist, and maintain pace "on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00f(2)(c).

Additionally, the RFC's inclusion of limitations on Plaintiff's decision making and changes in her work setting also account for her concentration deficits.  It is not difficult to recognize why someone who, like Plaintiff, has problems concentrating would become overwhelmed in a work environment where they were required to make a high volume of decisions on a daily basis.  An employee in Plaintiff's position would understandably be ill-suited to such a fast-paced, demanding workplace.  Yet the ALJ ensured that Plaintiff would not be pressed into that type of work by limiting her to only "occasional" decision making.  ECF No. 12-2 at 20.  The ALJ helpfully clarified that by "occasional" he meant "from very little up to one-third of the time."  *Id.* at 20 n.2.  That is an appropriate limitation for someone with an "acceptable" ability to "independently, appropriately, [and] effectively" concentrate, persist, and maintain pace "on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00f(2)(c).  Other courts have found the

---

unskilled tasks with only superficial contact with others."  *Petty*, 204 F. Supp. 3d at 200.  Again, the ALJ in this case imposed additional limitations beyond the mere talismanic invocation of "simple, routine, repetitive unskilled tasks."

same.  *See, e.g.*, *Mitchell*, 2021 WL 5310541, at *5 (finding that a RFC limiting the claimant to, among other things, "occasional decisions" adequately accounted for the claimant's moderate CPP limitations); *Vernon O. v. Kijakazi*, No. 20-cv-3135, 2021 WL 3566742, at *4 (D. Md. Aug. 12, 2021) (noting that "a limitation to 'occasional decision-making' accounts for a claimant's moderate difficulties in concentration, persistence, and pace"); *Smith v. Colvin*, No. 15-cv-234, 2016 WL 5718241, at *3 (W.D. Va. Sept. 30, 2016) (finding that limitations including "only occasional decision-making" and "only occasional changes in setting" sufficiently "account[ed] for [the claimant's] moderate limitation in concentration, persistence, and pace").

The ALJ further limited Plaintiff to a work environment featuring only "occasional changes."  ECF No. 12-2 at 20.  That restriction, too, addresses her concentration deficits.  Again, it is not hard to draw a connection between, on the one hand, a work setting where there are numerous moving parts and shifting variables and, on the other hand, constant distractions for an employee who struggles to concentrate and stay on task.  Yet, under the RFC the ALJ crafted, Plaintiff is not required to work in such settings; indeed, the restriction to "occasional changes" means that any changes will be kept at low levels.  The Court therefore concludes, as other courts have, that "occasional changes in the work setting" was an appropriate limitation given Plaintiff's concentration issues.  *See, e.g.*, *Mitchell*, 2021 WL 5310541, at *5 (finding that a RFC limiting the claimant to, among other things, "occasional changes in the work setting" adequately accounted for the claimant's moderate CPP limitations); *Hunter v. Berryhill*, No. 17-cv-112, 2018 WL 310138, at *13 (E.D. Va. Jan. 5, 2018) ("By eliminating more than occasional changes in the workplace, and limiting [p]laintiff to simple, routine tasks with no public interaction and only occasional interaction with supervisors and coworkers, the ALJ also properly accounted for her moderate difficulties with concentration and persistence."); *Linares v. Colvin*, No. 14-cv-120,

2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (concluding that the ALJ "accounted for [the claimant's] limitation in concentration and persistence by restricting her to a stable work environment"); *Hanson v. Comm'r of Soc. Sec.*, No. 14-cv-561, 2015 WL 1637451, at *5 (S.D. Ohio Apr. 13, 2015) (recommending affirmance of ALJ's decision denying benefits where the ALJ "limited [p]laintiff to work which involved only simple changes, recognizing that frequent or complex changes in the work environment would challenge someone who had difficulty maintaining attention and concentration"), *report and recommendation adopted*, 2015 WL 2085558 (S.D. Ohio May 5, 2015).  But even if Plaintiff does encounter an environment where some workplace changes are necessary, the ALJ partially credited the findings of the state agency consulting physicians, ECF No. 12-2 at 26, who concluded that Plaintiff "can adjust to routine changes in the workplace," ECF No. 12-3 at 13, 28, 44, 58.  Other courts have found that supportive of a RFC that limits a claimant with moderate CPP limitations to "simple, one-to four-step, routine, and repetitive tasks."  *Stout*, 2015 WL 7351503, at *12 (noting that the ALJ found that the claimant could "handle changes in routine," which supported the ALJ's conclusion that the claimant "'has the ability to at least remember simple instructions and execute simple tasks without significant difficulty'" and therefore perform "simple, one-to four-step, routine, and repetitive tasks" (quoting the ALJ's opinion)).

Thus, the Court finds that the combination of restrictions the ALJ imposed in Plaintiff's RFC—specifically, the limitation to simple, routine, one-to-four step tasks and only occasional decision making and changes in the work setting—adequately accounts for Plaintiff's moderate CPP limitations and are supported by substantial evidence.  So, Plaintiff's claim that the RFC is flawed on this basis is incorrect, as is her twin claim that the ALJ failed to include sufficient CPP limitations in the hypotheticals posed to the VE.  In fact, in keeping with what other courts have

deemed "a matter of best practice," the ALJ here "'refer[red] expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations.'" *Gajewski v. Saul*, No. 19-cv-185, 2020 WL 4932538, at *4 (N.D. Ind. Aug. 24, 2020) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620–21 (7th Cir. 2010)). During the hearing, the ALJ asked the VE to consider a hypothetical person who, among other things, "retains the ability to concentrate, persist, and stay on pace, with regard to performing simple, one-to-four step, routine tasks, and . . . can only be in occupations where she'd have only occasional decision making and occasional changes in the work setting." ECF No. 12-2 at 69. The ALJ subsequently adopted those limitations into the RFC finding, and they are supported by substantial evidence.

This finding is not inconsistent with this Court's conclusions in other cases presenting concentration, persistence, and pace issues. Plaintiff cites this Court's analysis of the issue in *Mirlin T. v. Kijakazi*, No. 20-cv-960, 2021 WL 9217635 (D.D.C. Aug. 24, 2021), *report and recommendation adopted*, 2022 WL 3139032 (D.D.C. Aug. 5, 2022), but there the ALJ limited the claimant to "simple work without fast pace or strict production quotas . . . where multi-tasking is not required and where changes in routine are simple." 2021 WL 9217635 at *5 (alteration in original); ECF No. 18-1 at 8–9. Those limitations, which this Court found insufficient to account for the claimant's moderate CPP limitations, are materially different from the RFC restrictions at issue in this case. Notably, the restrictions imposed in *Mirlin T.* did not limit the claimant's decisionmaking or heavily circumscribe changes in the workplace or restrict "simple work" even further to one-to-four step tasks. The same goes for this Court's recent findings in *Demetria R.* There, the ALJ restricted a claimant who was found to have a moderate CPP limitation to "simple, unskilled" work. *Demetria R.*, 2022 WL 3142376, at *5. This Court determined that such a limitation did not suffice to account for a moderate CPP limitation. *Id.* at *14–16. As should be

evident, the circumstances of *Demetria R.* are far different than those presented here:  Whereas the ALJ in that case merely limited the claimant to "simple, unskilled" work, here the ALJ imposed a number of other, additional limitations that implicitly accounted for Plaintiff's ability to stay on task.  Likewise, in *Nsiah*, this Court concluded that the claimant's moderate CPP limitation was not adequately addressed by a RFC restricting the claimant to "simple, routine, unskilled tasks; occasional changes in a routine work setting; and occasional interaction with the public, co-workers, and supervisors."  2021 WL 372784, at *15.  In this case, on the other hand, the ALJ added the "one-to-four step" task and occasional decision-making limitations, both of which address Plaintiff's concentration deficits.  Finally, the claimant in *Simmons v. Saul*, No. 18-cv-1293, 2019 WL 12251882 (D.D.C. Sept. 30, 2019), *report and recommendation adopted*, 2019 WL 12251883 (D.D.C. Oct. 22, 2019) was "limited to simple routine tasks," "frequent decision-making[,] and frequent interaction with the public or co-workers."  2019 WL 12251882, at *3.  Again, the ALJ in this case went further, restricting Plaintiff to only "occasional" decision-making (i.e., less than "frequent"), along with limitations to "one-to-four step" tasks and occasional changes in the work setting.  The combination of restrictions imposed by the ALJ in this case was sufficient to account for Plaintiff's moderate CPP limitations.

In her reply brief, Plaintiff contends that the ALJ's decision lacks "any explanation as to how the [ALJ] concluded that the Plaintiff's mental impairments resulted in the limitation that the Plaintiff was capable of performing simple one to four step tasks."  ECF No. 23 at 4.  The argument falls flat.  The explanation Plaintiff claims is missing comes on pages 10 and 11 of the ALJ's opinion.  ECF No. 12-2 at 22–23.  Therein, the ALJ explains that, in light of the evidence of Plaintiff's mental impairments, including her depressive symptoms and other mental health issues but also Dr. Nathan's findings that her attention and concentration was only "mildly impaired,"

Plaintiff had the ability to perform simple, one-to-four step routine tasks so long as she was also limited to occasional decision making and occasional changes in the work setting. *Id.* Given the aforementioned connections between those limitations and an individual's ability to focus and stay on task, the Court can discern the "logical bridge" between the evidence and the ALJ's conclusion. *Lane-Rauth*, 437 F. Supp. 2d at 67. More is not required.

        2.      The ALJ's Assessment of Dr. Magurno's Opinion

Plaintiff next asserts that the ALJ did not properly address Dr. Magurno's opinion restricting her to "mild levels of physical exertion" and a "moderate limitation[]" on standing. ECF No. 18-1 at 10; ECF No. 12-7 at 81. Specifically, Plaintiff argues that, despite finding Dr. Magurno's opinion's persuasive, the ALJ failed to account for her proffered limitations in the RFC assessment. ECF 18-1 at 10. The Court disagrees and concludes that the RFC incorporates the limitations Dr. Magurno found, and that those limitations are supported by substantial evidence.

Plaintiff says the ALJ "failed to address Dr. Magurno's limitation to mild physical exertion." ECF No. 18-1 at 10. Not so. Again, the RFC restricts Plaintiff to "light work," sitting for a total of six hours during an eight-hour workday, and standing and/or walking for a total of six hours in an eight-hour workday. ECF No. 12-2 at 20. The limitation to "light work" implicitly accounts for the limitation to "mild physical exertion." Recall that the SSA defines light work as "work requir[ing] . . . lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." SSR 83-10, 1983 WL 31251, at *5–6. Not surprisingly, a number of courts have found that such a restriction to light work is wholly consistent with a limitation to mild exertion. *See, e.g.*, *Bethany A. v. Comm'r of Soc. Sec.*, No. 20-cv-1267, 2022 WL 170405, at *4 (W.D.N.Y. Jan. 18, 2022) ("[T]he ALJ's RFC for light work is consistent with [the physician's] 'mild to moderate' exertional limitations.") (collecting cases); *Dino A. v. Saul*,

No. 20-cv-438, 2021 WL 2457680, at *2 (W.D.N.Y. June 16, 2021) ("It is well settled that mild exertional limitations are not inconsistent with the ability to perform light work."); *Chauncey P. v. Saul*, No. 19-cv-6785, 2021 WL 211543, at *5 (W.D.N.Y. Jan. 21, 2021) (rejecting the argument that "the ALJ's determination that [p]laintiff is capable of a limited range of 'light work'" was inconsistent with physician's finding that plaintiff "should avoid activities causing more than mild exertion"); *see also Russell v. Barnhart*, 58 F. App'x 25, 26 (4th Cir. 2003) (per curiam) (characterizing the "exertional requirements of light work" as "mild").   Thus, and contrary to Plaintiff's contentions, the ALJ addressed Dr. Magurno's opinion that she was restricted to "mild" exertion by limiting her to light work.[16]

Additionally, Plaintiff alleges that the RFC does not include restrictions on her ability to stand or walk despite Dr. Margurno's conclusion that she had "[m]oderate limitations for standing."  ECF No. 12-7 at 81; ECF No. 18-1 at 10.  To the extent Plaintiff asserts that the RFC lacks *any* limitations on her ability to stand or walk, she is mistaken.  Again, the RFC expressly limits Plaintiff's standing and/or walking to six hours in an eight hour work day.  ECF No. 12-2 at 20.  That restriction tracks the definition of light work.  *See* SSR 83-10, 1983 WL 31251, at *6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").  On the other hand, to the extent Plaintiff is arguing that the ALJ erred in failing to impose additional standing and/or walking limitations beyond those already contained in the RFC, she again misses the mark.  As an initial matter, the ALJ need not have included more restrictive standing and/or walking limitations because courts

---

[16] Plaintiff emphasizes that the difference between limiting her to light work versus sedentary work is significant here because, if restricted to sedentary work, she would likely be adjudged disabled.  ECF No. 18-1 at 10.  Though Plaintiff is correct that someone with her vocational profile—that is, a high school education and past-relevant work at the light and medium in exertional levels, with no transferable skills—would, according to the grids, be disabled if limited to sedentary work, *see* 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No 1, Rule 201.14, the ALJ reasonably found that she could perform light work, and that conclusion is supported by substantial evidence.

have found that a "restriction to light work"—which, as explained, requires about six hours of standing and/or walking—"is appropriate for an individual limited to a moderate amount of standing and/or walking." *Kim M. v. Kijakazi*, No. 20-cv-2072, 2021 WL 4033060, at *9 (D.D.C. Sept. 3, 2021).  More specifically, a moderate limitation for sitting, standing, and walking—which is what the ALJ found here—does not necessarily prevent a claimant from sitting, standing, or walking for six hours a day.  *See Harrington v. Colvin*, No. 14-cv-6044, 2015 WL 790756, *13–14 (W.D.N.Y. Feb. 25, 2015); *see also Crews v. Astrue*, No. 10-cv-5160, 2012 WL 1107685, *17 (S.D.N.Y. Mar. 27, 2012) (finding that a RFC of light work was consistent with a physician's opinion that the claimant had mild-to-moderate limitations for prolonged periods of sitting, standing, or climbing stairs); *Taylor v. Astrue*, 32 F. Supp. 3d 253, 270–71 (N.D.N.Y. 2012) (finding that physician's opinion that plaintiff had a moderate limitation in walking, provided support for the ALJ's RFC finding that plaintiff could stand/walk/sit for about six hours in an eight-hour workday).  Notably, Plaintiff does not dispute Dr. Magurno's "moderate limitation" finding.

Further, the medical records provide more than substantial evidence to support the ALJ's finding that Plaintiff could perform light work—that is, stand and/or walk for six of eight working hours.  Canvassing the record, the ALJ determined that Plaintiff "retain[ed] normal muscle strength and normal physiological gait without the use of any assistive device"; she had pursued only "infrequent and conservative" treatment for her back and foot pain; she reported cooking and cleaning multiple times per week and doing laundry once per week, in addition to slew of other activities; and reported in March 2019 that she exercised for a half-hour each day.  ECF No. 12-2 at 24.  Plaintiff does not dispute those findings, and they provide substantial evidence to support the ALJ's RFC assessment.  *See, e.g.*, *Darlene M. v. Kijakazi*, No. 20-cv-1817, 2021 WL 6841641,

at *7 (D.D.C. Sept. 3, 2021) (finding that substantial evidence supported a RFC of light work where, as here, the ALJ "cited multiple exam notes showing that Plaintiff had normal muscle strength . . . and normal gait"); *Harris v. Soc. Sec. Admin., Comm'r*, No. 13-cv-1147, 2014 WL 4926235, at *7 (N.D. Ala. Sept. 30, 2014) (acknowledging that the claimant's "infrequent and conservative medical treatment" supported ALJ's finding that claimant could perform light work); *Newberry v. Comm'r of Soc. Sec.*, No. 14-cv-880, 2015 WL 5257130, at *7 (N.D.N.Y. Sept. 9, 2015) (finding that substantial evidence supported a RFC of light work where, as here, the claimant indicated that he cooked, cleaned, and did laundry); *Rybka v. Comm'r of Soc. Sec.*, No. 07-cv-11132, 2008 WL 820147, at *3 (E.D. Mich. Mar. 25, 2008) (affirming ALJ's finding that the claimant, who reported exercising daily for 15-20 minutes and performing some cooking and cleaning, could perform light work).  Accordingly, the Court rejects Plaintiff's assertion that additional limitations on standing and/or walking should have been included in her RFC.  The restriction to six hours of standing/walking is sufficient to account for the "moderate" standing limitation found by Dr. Magurno.

### B.      The ALJ Properly Evaluated Plaintiff's Subjective Complaints

Finally, Plaintiff assails the ALJ's evaluation of her own statements concerning her symptoms. ECF No. 18-1 at 11–14.  The Plaintiff's argument, however, is cabined to the narrow issue of the ALJ's use of evidence concerning her activities of daily living as part of the analysis. She claims the ALJ's use of such evidence to discount her statements concerning the severity of her symptoms was improper because the ALJ failed to connect her ability to perform various tasks, including cooking, cleaning, shopping, and personal grooming, to the ability to engage in work-related activities on a sustained basis. *Id.* at 11–12.  The Court is not persuaded.  The argument

misapprehends—on multiple levels—the ALJ's analysis and does not furnish a basis for reversal or remand.

Social Security Ruling 16-3p sets forth guidance on how ALJs must consider a claimant's "symptoms," which are "the individual's own description or statement of his or her physical or mental impairment(s)." SSR 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). There are two steps to the SSR 16-3p analysis. First, the ALJ must determine whether a "medically determinable impairment" exists that could cause the claimant's symptoms. *Id.* at *2. Next, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects" of those symptoms. *Id.* "In considering the intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The ALJ hewed to that analytical structure in this case. He first concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." ECF No. 12-2 at 21. But he then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 22. In the second step of the analysis, the ALJ considered a broad swath of evidence, including medical records, treatment records, and the opinions of medical experts. *Id.* at 22–26.

Undeterred, Plaintiff claims that the ALJ "failed to explain how" Plaintiff's activities of daily living, including, as explained, cooking, cleaning, and shopping, "in any way equates to the ability to perform work-related activities eight hours per day, five days per week." ECF No. 18-1

at 11–12.  But the ALJ never made such a claim.  Nowhere does he state or suggest that Plaintiff's ability to perform activities in and around the home necessarily means she can perform light work. Instead, the ALJ uses Plaintiff's concessions concerning her daily activities, along with a constellation of other evidence, to discredit her claims that her impairments are so severe as to be disabling.  As Plaintiff herself acknowledges, ECF No. 23 at 2, that the ALJ can properly do, *see* 20 C.F.R. § 404.1529(c)(3)(i) (providing that, in evaluating a claimant's symptoms, an ALJ may properly consider their "daily activities").

Tellingly, other courts in this Circuit have rejected similar arguments raised by claimants in those cases.  Take, for instance, the recent decision in *Colter v. Kijakazi*, No. 20-cv-632, 2022 WL 715218 (D.D.C. Mar. 10, 2022).  In that case, the claimant asserted "that the ALJ improperly failed to reckon with the limited nature of [the claimant's] ability to perform her daily activities." 2022 WL 715218, at *14.  The court rejected the argument for reasons that are equally germane here.  The court first explained that, rather than simply ignore the claimant's testimony concerning her activities of daily living, the "ALJ's opinion [made] clear that he recognized and understood [the claimant's] alleged limitations as to her ability to perform daily activities" by "explicitly acknowledg[ing]" such limitations.  *Id.*  So too in this case.  For example, while the ALJ noted Plaintiff's report to Dr. Magurno that she "maintains her personal care/grooming," ECF No. 12-2 at 23, he also acknowledged her hearing testimony that "she does not shower when home alone because she fears falling" and "sometimes experiences incontinence at night," *id.* at 21. Additionally, the ALJ highlighted Plaintiff's statement in her function report that she cooked multiple times per week, *id.* at 23, yet also mentioned her contrary hearing testimony that she is no longer able to cook, *id.* at 21.  So, like in *Colter*, "[c]ontrary to Plaintiff's insinuations, the ALJ did not ignore or disregard her testimony as to the extent to which she can perform her daily

activities.  Rather, as the ALJ explained, he found that Plaintiff's alleged severity of symptoms was not entirely in accord with her professed daily activities, taking into account the relevant limitations."[17]  *Colter*, 2022 WL 715218, at *14.

More importantly, and as in *Colter*, the ALJ here did not rely solely on the discrepancies between Plaintiff's testimony and her daily activities in concluding that her symptoms were not disabling.  *See id.*  ("[T]he ALJ's analysis of [p]laintiff's credibility regarding her subjective complaints did not solely rely on evidence regarding her daily activities.").  Rather, the ALJ cited a bevy of other evidence to support his conclusion that Plaintiff could perform light work, including findings that her concentration was only mildly impaired and that she could understand and follow simple instructions; she "exhibited intact orientations, coherent speech, fair memory, fair concentration, and fair insight and judgment without suicidal or homicidal ideations"; treatment for certain musculoskeletal issues had "been infrequent and conservative"; she displayed normal strength and gait; her hypertension was controllable with medication; and diagnostic imaging revealed only mild degeneration in her back and small bone spurs in the feet.  ECF No. 12-2 at 22–24.  It was perfectly appropriate for the ALJ to contrast Plaintiff's statements to this other information, including the objective medical evidence—which, notably, Plaintiff does not contest.  *See, e.g.*, 20 C.F.R. § 416.929(c)(2) (stating that objective evidence is "a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work"); SSR 16-3p, 2016 WL 1119029, at *5 ("[I]nconsistencies in the objective medical evidence is one of the many factors

---

[17] The fact that the ALJ did not adopt Plaintiff's hearing testimony on her diminished ability to perform household activities does not mean those alleged limitations were ignored.  They were acknowledged, but ultimately rejected because they were at odds with the other evidence in the record.  *See* ECF No. 12-2 at 22 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.").

we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms."). More, the ALJ found persuasive the opinions of several physicians who concluded that, while Plaintiff did have certain physical and non-exertional impairments, she was nevertheless not disabled. ECF No. 12-2 at 24–26. The ALJ in *Colter* did the same. *See* 2022 WL 715218, at *14 ("[T]he ALJ considered [p]laintiff's medical records, treatment records, and the opinions of medical experts and found that the record as a whole undermined some of her subjective complaints."). Again, other than her already-rejected claims concerning Dr. Magurno, Plaintiff does not challenge the ALJ's assessment of these physicians' opinions or their underlying findings. For these reasons, the Court is satisfied that the ALJ appropriately evaluated Plaintiff's subjective complaints and rejects her arguments to the contrary.[18]

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment of reversal (ECF No. 18) is

---

[18] Plaintiff relies heavily on this Court's decision in *Higgins v. Saul*, No. 16-cv-27, 2019 WL 4418681 (D.D.C. Sept. 16, 2019). Her comparisons to *Higgins* are not well taken. In that case, the court found error where the ALJ failed to acknowledge evidence of the claimant's limitations in daily activities. *Id.* at *11–12. Not so here, where, as explained, the ALJ acknowledged Plaintiff's testimony concerning her ability—or, rather, inability—to perform household work, but ultimately concluded that her statements concerning the severity of her impairments were not totally consistent with the record as a whole. In so doing, the ALJ did not rely solely on Plaintiff's capacity for handling chores and other "mundane tasks of life," *Polidoro v. Apfel*, No. 98-cv-2071, 1999 WL 203350, at *8 (S.D.N.Y. Apr. 12, 1999), but rather on a host of other evidence, including reports of physicians and diagnostic imaging, ECF No. 12-2 at 22–26. Thus, and contrary to the ALJ in *Higgins*, the ALJ here did not "'ignore[] the *limited* fashion [in which] the plaintiff engages in some of the activities she described.'" *Higgins*, 2019 WL 4418681, at *12 (second alteration in original) (emphasis added) (quoting *Jackson v. Barnhart*, 271 F. Supp. 2d 30, 36 (D.D.C. 2002)).

    Plaintiff also emphasizes *Higgins'* reliance on *Polidoro* for the proposition that "'[a] claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job.'" *Higgins*, 2019 WL 4418681, at *11 (alteration in original) (quoting *Polidoro*, 1999 WL 203350, at *8). As an initial matter, the Court notes that that statement in *Polidoro* has not garnered any widespread currency in this Circuit. Indeed, *Higgins* appears to be the only court in this Circuit to rely on it. Yet even if *Polidoro's* limitation on the use of activities of daily living in the symptom analysis is correct, the case itself only bolsters the Court's conclusion in this matter. Indeed, although the court in *Polidoro* concluded that the ALJ erred in addressing "plaintiff's subjective statements of pain," that mistake did "not provide a basis for reversal" even in *Polidoro* because there was "substantial evidence in the record to support the conclusion that plaintiff's pain was not so severe as to preclude gainful employment." 1999 WL 203350, at *9. Just so here, where the ALJ cited a plethora of other evidence, including reports from physicians and imaging studies, in concluding that Plaintiff's impairments were not disabling.

**DENIED** and Defendant's motion for judgment of affirmance (ECF No. 19) is **GRANTED**.  A separate order dismissing the case will issue.

Date:  August 24, 2022

_____

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE